SOLONDZ BROS. LUMBER CO., A CORPORATION, PLAIN-
TIFF-APPELLANT, v. JOSEPH PIPERATO, DEFEND-
ANT, AND WILLIAM YAROTSKY AND CATHERINE
YAROTSKY, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 16, 1953—Decided November 30, 1953.

Before Judges EASTWOOD, JAYNE and FRANCIS.

*Mr. Sidney Krieger* argued the cause for the plaintiff-appellant.

*Mr. A. Howard Finkel* argued the cause for the defendants-respondents (*Mr. Emanuel Gersten*, attorney).

The opinion of the court was delivered by

EASTWOOD, S. J. A. D. This appeal concerns itself with the construction of sections *N. J. S.* 2*A* :44–75, 77, 81 and 85, of the Mechanics' Lien Law.

Among the questions posed there are only three that require our determination, to wit: (1) Did the plaintiff's stop notice set forth and specify the amount due and demanded as nearly as possible?; (2) Did the two payments aggregating $1,100 made by the owners to the contractor constitute advance payments for which the owners were not entitled to any credit in ascertaining the amount of money in their hands at the time of the filing of the stop notice?; and (3) Were the owners allowed a sufficient credit for the cost of completing the construction, consequent upon the abandonment of the work by the contractor?

The trial court, sitting without a jury by consent of the parties, held that the challenged payments aggregating $1,100 were not, under its construction of the statute, advance payments; that the owners were entitled to credit therefor in ascertaining the amount of money in their hands at the time of the filing of the stop notice and that the owners were entitled to a further credit of $750 for the reasonable cost of completing the construction of the dwelling house under the terms of the contract, thus leaving a balance of $150 in the hands of the owners subject to the plaintiff's claim. The plaintiff appealed from the ensuing judgment in its favor for $150 and the defendants-owners filed a cross-appeal from that part of the judgment which allowed them the sum of $750 for the completion of the construction.

The following factual recital will more clearly portray the resulting issues.

The defendants William Yarotsky and Catherine Yarotsky entered into a contract on September 29, 1950 with one Joseph Piperato, whereby the latter agreed to erect a dwelling house for the sum of $15,500, which was to be paid in

installments, the final payment of $2,000 to be made upon the full completion as certified by the architect. The building contract and accompanying specifications were filed in the Union County Clerk's office on October 3, 1950.

The building materials used in the Yarotsky house were purchased by the contractor from the plaintiff, and totalled the sum of $5,109.58, against which Piperato had a credit for payments on account and materials not used in the amount of $2,647.09, leaving a balance due of $2,462.49. In the instant action, Piperato was made a defendant and judgment by default was entered against him in the sum claimed plus interest and costs of suit.

The plaintiff finding itself unable to collect the amount due from the contractor, filed a "stop notice" on March 6, 1952 in the Union County Clerk's Office, directed to the Yarotskys, wherein it was stated that there was due to the plaintiff the sum of $2,462.49 for materials furnished and demanding that the same be retained out of any money due or to become due from the defendants-owners. A copy of the stop notice was, on March 7, 1952, sent by registered mail to the Yarotskys and was received by them on March 15, 1952.

It is clear that the contractor never completed the house. At the time the plaintiff filed its stop notice, the owners had remaining in their hands the sum of only $900 out of the final payment of $2,000.

When it became apparent that the contractor would not complete the house—in fact, that he had actually abandoned the job—the owners vacated their other place of residence in November, 1951, and moved into the new house in its unfinished condition. The Yarotskys assert that out of the final $2,000 installment they made payments to the plumber, painter and for other work and materials necessary for a completion of the construction, totalling $1,370.59, which payments they contend were expended in good faith about five months before the plaintiff filed its stop notice; that on April 10, 1952 and April 18, 1952 they paid out $100 and $225, totalling $325, for landscaping and walks, and also

$270.59 for linoleum, electrical fixtures and hardware, which the builder failed to provide, thus leaving in the hands of the Yarotskys the sum of $304.41. There was testimony proffered by the defendants' expert, Walter Ernst, that it would cost approximately $825 to repair some of the work done faultily by the contractor and that the job was still not according to the plans, and that to re-do the necessary work in accordance with the plans it would cost more than $2,000.

When a construction contract is filed, *N. J. S.* 2A :44–75 of the Mechanics' Lien Law imposes a lien for materialmen and laborers on any funds in the hands of the owner representing money due or to grow due to the contractor.

In the case of *James Falcone Plumbing & Heating Co., Inc., v. Pasquale,* 26 *N. J. Super.* 285 *(App. Div.* 1953), Judge Francis discusses quite exhaustively all of the legal questions that arise in a consideration of the present appeal. Rather than needlessly reiterate the legal rules enunciated therein, we suggest that the reader of this opinion will find it profitable, indeed, if he examine that decision.

■■ The contention of the Yarotskys that the amount due and demanded in the stop notice was not in conformity with the statute *(N. J. S.* 2A :44–77), in that it did not "set forth the amount due and demanded, specifying the amount as nearly as possible" is not supported by the proofs. The owners argue that the differences in the price of the material as charged when compared with the amount of credits for materials not used and returned, show a definite design or carelessness on the part of the materialman which is fatal, citing the *Falcone* case, *supra,* and other cases in support of their contention. The language of section 77 is not a mandate to set forth the amount due with absolute accuracy. But as much accuracy as is reasonably possible is required. *Tuttle v. Cadwell,* 92 *N. J. L.* 26 *(Sup. Ct.* 1918); *Harry Pinsky & Son Co. v. Wike,* 101 *N. J. Eq.* 45 *(Ch.* 1927), affirmed 103 *N. J. Eq.* 18 *(E. & A.* 1928); *Intili v. Bonnet,* 6 *N. J. Misc.* 1043 *(Sup. Ct.* 1928); *Hasson v. Bruzel,* 104 *N. J. Eq.* 95 *(Ch.* 1929); *James*

*Falcone Plumbing & Heating Co., Inc., v. Pasquale, supra.*
It is apparent, however, that in the instant case, under the
proofs and the holding of the trial judge, who sat as court
and jury, there was no variance between the amount stated
in the stop notice and the amount due the plaintiff as
established at the trial. The default judgment entered in
favor of the plaintiff against the contractor Piperato in this
action was for the amount stated in the stop notice. In his
findings of fact and conclusions of law the trial judge stated:

"The plaintiff, Solondz Brothers Lumber Company, furnished
material to Piperato to be used in the construction of the house.
There was a balance due for material supplied in the amount of
$2,462.49. The plaintiff proceeded to secure a default judgment
against Piperato in the amount of $2,498.49, damages, costs, and
interest on the principal sum due."

Therefore, under the proofs, we conclude that there was a
sufficient compliance with the statute. *James Falcone
Plumbing & Heating Co., Inc., v. Pasquale, supra; Harry
Pinsky & Son Co. v. Wike, supra.*

We turn now to a consideration of the plaintiff's
contention that the two payments aggregating $1,100 made
to the contractor out of the final payment of $2,000, were
advance payments for which the owners were not entitled to
take credit in ascertaining the amount of money in their
hands at the time of the filing of the stop notice. The
pertinent provision of the statute, *N. J. S.* 2A:44-85,
provides:

"If the owner of any building or other property which, by
the provisions of this article, is made the subject of liens for or
toward the erection, construction, completion, alteration, repair or
addition thereto for which labor has been performed or materials
furnished by contract, duly filed, as provided by section 2A:44-75
of this title, shall, for the purpose of avoiding the provisions of
this article or in advance of the terms of such contract, pay any
money or other valuable thing on such contract, and the amount
still due to the contractor, after such payment has been made,
shall be insufficient to satisfy the notices filed pursuant to section
2A:44-77 of this title, such owner shall be liable in the same manner
as if no such payment had been made."

The genesis for the prevailing rule of law in construing the applicable provisions of the Mechanics' Lien Law is found in the case of *Slingerland v. Binns*, 56 *N. J. Eq.* 413, at *page* 415 (*E. & A.* 1898), wherein it is stated:

"\* \* \* It expressly forbids the owner to pay any money in advance of the terms of the contract, if the effect may be that the amount unpaid will prove insufficient to satisfy notices served in conformity with the statute. The prohibition is not confined to payments made to the contractor personally. It embraces payments made to anyone. In substance, it directs that the owner shall not in any way discharge his liability to pay under the contract, until, according to the terms of the contract, the time to do so has arrived, in order that, until that time, such liability may be preserved for the benefit of workmen and materialmen who serve the statutory notice. \* \* \*"

The plaintiff-appellant contends, and rightfully so we think, that the two payments, one for $650 and the other for $450, were improperly made to the contractor and must be found to have been advance payments. The Yarotskys contend that the plaintiff has no right in the $1,100 so paid, in view of the fact that the payments were made several months prior to the filing of the stop notice and they represent money due sub-contractors for work completed prior to the filing of the stop notice and that the payments were made in good faith.

Unquestionably, the only unpaid installment payable to the contractor under the terms of the agreement was the final one of $2,000, which clearly did not become due until the full completion of the construction work. That the construction under the contract was never completed is not seriously challenged. It necessarily follows that the contractor never became entitled to the final payment of $2,000, and the only sums which the owners might deduct therefrom were those required to be expended by the owners to complete the construction called for under the contract. The Yarotskys contend that when the builder defaulted, their obligation to pay and their liability to the contractor was over; that the "Owners were perfectly within their rights at this stage of the situation to pay out moneys for the items

which went towards completion of the contract by themselves. They lived in the house and paid these moneys out themselves for almost six months before the plaintiff served the stop notice, at which time they had only $629.41 in their hands. Out of these moneys they paid an additional $325.00 for grading and walks after the notice was served, leaving $304.41. The trial court's finding of fact was that $750.00 was necessary to repair and complete the house, which definitely wipes out any claim of the stop notice," citing the case of *Slingerland v. Binns, supra.* The fallacy of the Yarotskys' argument is apparent when it is considered that the two payments were claimed to have been made to the plumber and the painter. If this claim contention were true, then the installment of $4,000 to be made when the house was white-coated and the plumbing and heating completed was an advance payment, as, under that situation, it was made prior to the time called for in the contract. However, that question is not at issue here. But the record does not disclose that the Yarotskys engaged any plumber or painter to complete the work under the contract. It, therefore, is a reasonable assumption that when the respective payments of $650 and $450 were made, the plumbing and painting work had been completed. In fact, Mrs. Yarotsky testified that the plumbing and heating had been completed when the contractor was given the aforementioned check for $4,000 and that the plumber should have been paid therefrom. The excuse for making the payment of $650 to the plumber was by reason of his refusal to repair a broken water pipe caused by an accident entirely unrelated to the obligation of the plumber under the contractual agreement, until he was paid the amount due him from the contractor. In fact, the challenged payments were made to the contractor and not to the sub-contractors, the two checks bearing the inscription "On account of final payment of $2,000." The holding of the court in the *Slingerland v. Binns, supra,* case, has been consistently followed. *Daley v. Somers Lumber Co.,* 70 *N. J. Eq.* 343 (*Ch.* 1905), affirmed 71 *N. J. Eq.* 307 (*E. & A.* 1906); *Van Nest v. Hirsch,* 87

N. J. L. 336 (*E. & A.* 1915); *William F. Glasser & Co. v. Muencks*, 99 *N. J. Eq.* 42 (*Ch.* 1926); *Hasson v. Bruzel, supra; J. D. Loizeaux Lumber Co. v. Steinberg*, 102 *N. J. L.* 15 (*Sup. Ct.* 1925). "Once the contract is filed it becomes the chart by which all subsidiary parties in interest adjust their obligations and shape their course." *James Falcone Plumbing & Heating Co., Inc., v. Pasquale, supra.* *Vide Builders' Material Supply Co. v. Schoen*, 86 *N. J. L.* 290 (*E. & A.* 1914); *Somers Lumber Co. v. Kaufman*, 102 *N. J. L.* 601 (*E. & A.* 1926); *Stevens v. Robinson*, 94 *N. J. Eq.* 30 (*Ch.* 1922). When a contract is filed, materialmen and laborers become entitled to assume that no installment will be paid to the contractor until it becomes due and payable under the terms of the contract. The legislative intendment of the statute under review clearly indicates that advance payments to the contractor or to materialmen of the contractor are made at the owner's peril. *William F. Glasser & Co. v. Muencks, supra.*

The trial judge held that the stop notice claimant could not hold the owners responsible for advance payments made prior to the service of the stop notice and, therefore, the owners were not required to account to the plaintiff for the $1,100 which had been prepaid to the contractor, and citing in support of his ruling the cases of *Passaic-Bergen Lumber Co. v. Peterson*, 105 *N. J. L.* 537 (*Sup. Ct.* 1929), and *Wilkinson v. Behringer*, 118 *N. J. L.* 5 (*E. & A.* 1937). These cases are distinguishable from that *sub judice* and it is obvious that the trial judge erroneously construed the language of *N. J. S.* 2A:44–85 in reaching such a conclusion. In the *Passaic-Bergen Lumber Co.* case, the filed building contract provided that the final payment to the contractor was to be the sum of $4,000. It was claimed by the materialmen that the owner made two advance payments to the contractor, one on November 28 or 29, 1924, of $2,500, and the other on December 20, 1924, of $1,500, both of which were advance payments. The materialmen served a stop notice on January 9, 1925. The materialmen sought to hold the owner for the amount due them and liable for

the amount of the alleged advance payments. The jury returned a verdict of no cause of action which, on appeal, was affirmed by the Supreme Court, the court holding:

"* * * Assuming that the payments already made were due when the stop notice of the plaintiff was served on January 9, 1925, this latter was a question of fact, which was specifically submitted by the trial judge to the jury for determination. The verdict of the jury found as a fact that these payments became due to the contractor before January 9, 1925, the date on which the stop notice was served upon the defendant.

This disposes of this case and the ground of appeal filed. * * *"

It is apparent that in the *Passaic-Bergen Lumber Co.* case the issue was entirely different, that the proofs established that the payments made had become due to the contractor. In the instant case the proofs are clear that in view of the fact that the house was never completed, the final payment of $2,000 never became due and, therefore, the challenged payments must be construed to have been advance payments. In fact, the court in the *Passaic-Bergen Lumber Co.* case, in approving the *Slingerland v. Binns, supra*, case, held that the pertinent provision of the Mechanics' Lien Law gives "'* * * to persons entitled to serve the statutory notice an inchoate lien upon the liability of the owner under the contract, until that liability matures according to the terms of the contract, such lien to become perfect on service of the notice before the liability matures, but to expire on such maturity if no notice has been given; for a notice served after maturity derives no aid from this provision.'" Nor is the case of *Wilkinson v. Behringer, supra,* relied upon by the trial court, any support for the court's adjudication, as the question of advance payments was not an issue.

The cross-appellants, the Yarotskys, feel aggrieved at the trial court's finding that they were only entitled to the sum of $750 for the completion of the dwelling house. The law in this State is well settled—and the plaintiff so concedes—that where there is an unpaid balance under a construction contract the claim of an owner who expends money to complete the structure following default of the

contractor, is superior to that of stop notice claimants. *N. J. S. 2A :44–85. Post v. Geldziler*, 105 *N. J. L.* 370 (*E. & A.* 1929); *Brown v. Home Development Co.*, 129 *N. J. Eq.* 172 (*Ch.* 1941). The Yarotskys argue that the trial court should have given them credit for items of linoleum, electrical fixtures, hardware, landscaping and walks, and an allowance to remedy work faultily done by the contractor. At this point, we might call attention to the fact that there seems to be no proof in the record that the items of linoleum, electrical fixtures, hardware, landscaping and walks were included in the work required to be done by the contractor, nor was there any testimony, other than their own, as to the work and materials represented by those items nor as to the reasonableness of the cost thereof. The testimony as to the estimated cost of remedying faulty work was quite speculative. As aptly stated in *Slingerland v. Binns*, *supra*: "Of course, this inchoate lien does not impair the owner's right to protect himself against consequences of any default upon the part of the contractor, * * *"

*R. R.* 1 :5–3 and *R. R.* 2 :5 provide that we may, in our discretion, review any cause involving issues of fact determined by the trial court and make new or amended findings of fact, but due regard shall be given to the opportunity of the trial judge to judge of the credibility of the witnesses. *Walcutt v. Holiday Motors*, 1 *N. J. Super.* 117 (*App. Div.* 1948). In the instant case, in view of the fact that our review of the evidence persuades us that his findings are supported by the competent evidence adduced, we find no necessity for making new or amended findings of fact with respect to the allowance of $750 found to be due by the trial judge to the owners.

That part of the judgment allowing the Yarotskys credits for $1,100 is reversed, and that part of the judgment allowing the Yarotskys $750 for the cost of the completion of the dwelling house is affirmed.

In conformity with *R. R.* 1 :9–1, *R. R.* 2 :9–1 (*b*), we direct that a judgment be entered in favor of the plaintiff and against the defendants in the sum of $1,250, with costs.